NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000168
22-NOV-2016
08:04 AM**

NO. CAAP-13-0000168

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

ELIZABETH-ANN K. MOTOYAMA, Plaintiff-Appellant, v.
STATE OF HAWAI'I, DEPARTMENT OF TRANSPORTATION; GLENN OKIMOTO,
in his Official Capacity; BRENNON MORIOKA, Individually and
in his Official Capacity; FRANCIS KEENO, Individually and
in his Official Capacity; REY DOMINGO, Individually and
in his Official Capacity; and JANE DOES 1-10;
JOHN DOES 1-10, Defendants-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 11-1-1669-08 ECN)

SUMMARY DISPOSITION ORDER
(By: Foley, Presiding Judge, Fujise and Leonard, JJ.)

Plaintiff-Appellant Elizabeth-Ann K. Motoyama (**Motoyama**

or **Appellant**) appeals from the March 4, 2013 Final Judgment

(**Judgment**), entered by the Circuit Court of the First Circuit

(**Circuit Court**),[1] in favor of the Defendants-Appellees

(collectively, the **State Defendants** or **Appellees**) and against

Motoyama.  Motoyama also challenges the Circuit Court's February

7, 2013 Order Granting Defendants' Motion for Judgment on the

Pleadings (**Order Granting Rule 12(c) Motion**).

---

[1]     The Honorable Edwin C. Nacino presided.

This action was preceded by a suit filed by Motoyama in the U.S. District Court for the District of Hawai'i (**Federal Court**) (<u>Motoyama I</u>). <u>Motoyama I</u> arose from the same factual allegations as this action and sought relief against the same defendants as named in this case (as well as additional defendants). In <u>Motoyama I</u>, Motoyama moved to file a first amended complaint, which was granted in part and denied in part. Motoyama was permitted to amend her Federal Court complaint to bring certain additional claims against Defendant-Appellee State of Hawai'i, Department of Transportation (**DOT**), but denied leave to add various additional state and federal claims against Defendant-Appellee Glenn Okimoto (**Okimoto**), in his official capacity, and Defendants-Appellees Rey Domingo (**Domingo**), Francis Keeno (**Keeno**), and Brennon Morioka (**Morioka**) (and others), individually and in their official capacities. After a further motion, Motoyama was allowed to add Okimoto, then Director of DOT, in his official capacity for the purpose of seeking injunctive relief. After the filing of Motoyama's second amended complaint, the Federal Court defendants moved for summary judgment. On March 29, 2012, the Federal Court entered an order granting the motion for summary judgment. <u>See Motoyama v. Haw., Dept. Of Transp.</u>, 864 F. Supp. 2d 965 (D. Haw. 2012) (<u>Motoyama I</u>), <u>aff'd</u>, 584 F. App'x 399 (9th Cir. 2014). The same day, the Federal Court also entered judgment in favor of all defendants and against Motoyama on all claims. The Ninth Circuit Court of Appeals affirmed the Federal Court's judgment. <u>See Motoyama v.</u>

Haw., Dep't of Transp., 584 F. App'x 399 (9th Cir. 2014) *cert. denied*, 135 S.Ct. 2840 (2015).

The complaint in this case (**Motoyama II**), which was filed on August 5, 2011, includes seven counts, alleging: (1) violations of Hawaii Revised Statutes (**HRS**) § 378-2(1)(A),(2),(3) (1993) and Title VII of the Civil Rights Act of 1964 (**Title VII**), as amended, for disparate treatment and retaliation for engaging in a protected activity, against DOT, Domingo, Keeno, and Morioka (**Count I**); (2) violations of HRS § 378-2(1)(A),(2),(3) and the Americans with Disabilities Act (**ADA**), alleging disability discrimination and retaliation against DOT, Domingo, Keeno, and Morioka (**Count II**); (3) violations of The Equal Protection Clause of the U.S. Constitution and art. I and art. XVI of the Hawaiʻi Constitution, against Domingo, Keeno, and Morioka (**Count III**); (4) defamation through libel, slander, and false light invasion of privacy, against Domingo, Keeno, and Morioka (**Count IV**); (5) intentional infliction of emotional distress (**IIED**), against Domingo, Keeno, and Morioka (**Count V**); (6) wrongful termination in violation of civil service laws and public policy, against DOT, Domingo, Keeno, and Morioka (**Count VI**); and (7) violation of the Hawaii Whistleblowers' Protection Act (**HWPA**), HRS § 378-62, against DOT, Domingo, Keeno, and Morioka (**Count VII**).

On December 18, 2012, the State Defendants filed a Hawaiʻi Rules of Civil Procedure (**HRCP**) Rule 12(c) motion for judgment on the pleadings, arguing that Motoyama is barred from relief in this case based on: (1) *res judicata* and collateral estoppel from the Motoyama I Federal Court judgment; (2) the

3

applicable statutes of limitations; and (3) qualified immunity. After a January 17, 2013 hearing, the Circuit Court entered the Order Granting Rule 12(c) Motion and Judgment. Motoyama timely filed a notice of appeal.

On appeal, Motoyama raises three points of error, contending that the Circuit Court erred when it: (1) stated generally in its decision that it agreed with the State's analysis of what occurred and that Motoyama's claims should have been litigated in Motoyama I; (2) considered matters outside the pleadings, but did not treat the HRCP Rule 12(c) motion as a motion for summary judgment; and (3) concluded that the doctrines of *res judicata*, collateral estoppel, qualified immunity, and the statute of limitations barred Motoyama's claims in this case.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Motoyama's points of error as follows:

(1) To the extent that Motoyama contends that the Circuit Court misapprehended the Federal Court's rulings based on what the State presented, this argument is without merit. To the extent that Motoyama contends that the Circuit Court erred in construing the effect of the Federal Court's rulings, Motoyama's contentions will be addressed in conjunction with the disposition of her third point of error.

(2) HRCP Rule 12(c) states, in relevant part:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not

4

excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56[.]

However, in ruling on a rule 12(c) motion, a court can also take judicial notice of other facts. See Marsland v. Pang, 5 Haw. App. 463, 475, 701 P.2d 175, 186 (1985) (citing 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1367 (1969)) ("A Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice.").

Where collateral estoppel is used as a defense in an HRCP Rule 12(b)(6) motion, judicial notice extends to prior related proceedings. See Ellis v. Crockett, 51 Haw. 45, 55, 451 P.2d 814, 821 (1969). Because a Rule 12(c) motion serves "much the same purpose" as a Rule 12(b)(6) motion, except that it comes after the conclusion of the pleadings, the same rule applies. Marsland, 5 Haw. at 474, 701 P.2d at 186. Judicial notice of the prior proceedings extends to "the truth of facts asserted in documents such as orders, judgments[,] and findings of fact and conclusions of law because of the principles of collateral estoppel, res judicata, and the law of the case." State v. Kotis, 91 Hawai'i 319, 342, 984 P.2d 78, 101 (1999) (citation omitted).

Here, Appellees raised the defenses of res judicata, collateral estoppel, qualified immunity, and statute of limitations in their Rule 12(c) motion. Thus, the Circuit Court

properly took judicial notice of the Motoyama I proceeding and its relevant orders and judgments in determining whether the claims in Motoyama II are precluded or barred. Therefore, we conclude that the Circuit court did not err when it considered the orders and judgment from Motoyama I, but did not treat the motion as a motion for summary judgment under HRCP Rule 56.

(3) Motoyama argues that *res judicata* and collateral estoppel do not preclude her state law claims against the DOT and the individual defendants because, *inter alia*, no state law claims were litigated in Motoyama I. Motoyama does not dispute on appeal that her federal law claims are barred by the doctrine of *res judicata*.

*Res judicata* prohibits a party from relitigating a previously adjudicated claim or cause of action. *Res judicata* is applicable when: (1) the <u>claim or cause of action</u> in the present action is identical to the one decided in the prior adjudication; (2) there was a final judgment on the merits in the prior adjudication; and (3) the parties to the present action are the same or in privity with the parties in the prior action. <u>See</u>, e.g., <u>Bremer v. Weeks</u>, 104 Hawai'i 43, 53-54, 85 P.3d 150, 160-61 (2004). *Res judicata* prohibits the relitigation of all grounds and defenses which might have been properly litigated in the prior action, even if the issues were not litigated or decided in the earlier adjudication of the subject claim or cause of action. <u>Id.</u> at 53, 85 P.3d at 160 (citations omitted).

Collateral estoppel[2] may preclude the relitigation of <u>a fact or issue</u> that was previously determined in a prior action <u>on a different claim or cause of action</u> between the same parties or their privies. Collateral estoppel only applies, however, if the particular issue in question was actually litigated, finally decided, and essential to the earlier valid and final judgment. See <u>Omerod v. Heirs of Kaheananui</u>, 116 Hawaiʻi 239, 264, 172 P.3d 983, 1008 (2007) (citing <u>Dorrance v. Lee</u>, 90 Hawaiʻi 143, 149, 976 P.2d 904, 910 (1999)). Thus, the test for collateral estoppel has four elements: (1) the fact or issue in the present action is identical to the one decided in the prior adjudication; (2) there was a final judgment on the merits in the prior adjudication; (3) the parties to the present action are the same or in privity with the parties in the prior action; and (4) the fact or issue decided in the prior action was actually litigated, finally decided, and essential to the earlier valid and final judgment. <u>Id.</u> (citing <u>Dorrance</u>, 90 Hawaiʻi at 149, 976 P.2d at 910). Hence, where an essential element to one of Appellant's claims is collaterally estopped, the claim should be dismissed because Appellant cannot establish a *prima facie* case.

Count I claims a violation of Title VII and HRS § 378-2, *et seq.*, alleging "disparate treatment/retaliation" for engaging in a protected activity. Specifically, Motoyama alleges that because of her involvement in protected activities, the

---

[2] Collateral estoppel is frequently, and perhaps confusingly, referred to as an aspect of *res judicata*. <u>See</u>, <u>e.g.</u>, <u>Omerod</u>, 116 Hawaiʻi at 263-64, 172 P.3d at 1007-08; <u>Keahole Def. Coal., Inc. v. Bd. of Land & Nat. Res.</u>, 110 Hawaiʻi 419, 429, 134 P.3d 585, 595 (2006) (citations omitted).

State Defendants subjected her to "a retaliatory hostile work environment through their numerous acts of retaliation by its/their agents and employees, including, but not limited to, being placed under investigation, having her duties removed, being placed on administrative leave without justification, and then having her employment wrongfully terminated."

As the Title VII retaliation and discrimination for participating in a protected activity claim has already been litigated in Motoyama I, *res judicata* precludes its relitigation here. Protected activity laws under Title VII and HRS § 378-2 are analogous, but they do not appear to be identical causes of action. Therefore, a final judgment on the merits in the Title VII does not necessarily bar the HRS § 378-2 claim under the doctrine of *res judicata*. However, if any essential elements of the HRS § 378-2 claim were actually litigated, finally decided, and essential to the valid final judgment in Motoyama I, collateral estoppel precludes the relitigation of those issues.

Hawai'i's protected activity law is codified as HRS § 378-2(2) (1993) and holds, in relevant part:

> It shall be an unlawful discriminatory practice:
> (2) For any employer . . . to discharge, expel, or otherwise discriminate against any individual because the individual has opposed any practice forbidden by this part or has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part[.]

Such claims are subject to the following three part test:

> (1) the plaintiff must first establish a prima facie case of such retaliation by demonstrating that (a) the plaintiff (i) has opposed any practice forbidden by HRS chapter 378, Employment Practices, Part I, Discriminatory Practices or (ii) has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices

8

> prohibited under this part, (b) his or her employer, labor organization, or employment agency has discharged, expelled, or otherwise discriminated against the plaintiff, and (c) a causal link has existed between the protected activity and the adverse action; (2) if the plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action, and (3) if the defendant articulates such a reason, the burden shifts back to the plaintiff to show evidence demonstrating that the reason given by the defendant is pretextual.

Schefke v. Reliable Collection Agency, Ltd., 96 Hawaiʻi 408, 426, 32 P.3d 52, 70 (2001) (citations, internal quotation marks, and brackets omitted).

The Hawaiʻi Supreme Court looks to federal courts' analysis of Title VII in applying HRS § 378-2. See Sam Teague, Ltd. v. Haw. Civil Rights Comm'n, 89 Hawaiʻi 269, 281, 971 P.2d 1104, 1116 (1999) ("the federal courts' interpretation of Title VII is useful in construing Hawaiʻi's employment discrimination law"). The pertinent portion of Title VII regarding protected activities is codified as 42 U.S.C. § 2000e-3 and states, in relevant part:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C.A. § 2000e-3(a) (West). In applying Title VII in Motoyama I, the Federal Court analyzed Appellant's claim under: (1) the "opposition clause," where the protected activity is opposing a discriminatory practice of the employer, and (2) the "participation clause," where the protected activity is the voicing of the claimant's own injury. Motoyama I, 864 F. Supp. 2d at 984 (quoting Learned v. City of Bellevue, 860 F.2d 928, 932 (9th Cir. 1988)).

In Motoyama I, the Federal Court found that Appellant's involvement in the investigation of employee complaints, as part of her job, was not a protected activity under the opposition clause because "her assertions and evidence do not suggest that she opposed an action of the [DOT] or any supervisor that is unlawful under Title VII[.]" Id. at 980. Specifically, four out of five Title VII investigations relied on by Appellant in her claim did not result in a finding of unlawful discrimination:

> She made no findings regarding the J.S. complaint about financial fraud, which was based on whistle-blowing related to financial fraud and workplace violence . . . because it had been withdrawn; she made no findings regarding the C.D. case because the investigation was conducted by C.D.'s supervisor; she concluded there was no discrimination based on marital status or gender in M.Y.'s case; and the H.H. case resulted in a settlement agreement without a specific finding of sexual harassment.

Id. at 979. As to the one investigation where discrimination had occurred, it was a sexual harassment claim between co-employees, and the fact that Appellant claimed that her supervisor was "very critical of [her] findings" was "insufficient to establish" that she opposed any discriminatory practice of DOT. Id. at 980. Because she presented no evidence that she opposed any discriminatory practice made unlawful under Title VII, the Motoyama I court determined that she did not engage in a protected activity through her investigations of employee complaints. Id. Because establishing that a plaintiff opposed a unlawful employment practice is a required element of a Title VII protected activity case, and because the issue was determined on summary judgment, this issue has been actually litigated, finally decided, and is essential to the judgment.

Like Title VII, HRS § 378-2(2) has an opposition clause and a participation clause. Here, the language of the opposition clause in HRS § 378-2(2) is substantially the same as the opposition clause in Title VII in that a *prima facie* showing requires the claimant to demonstrate that she "opposed any practice forbidden by" that section. As explained above, Appellant failed to present any evidence of unlawful discriminatory employment practices of DOT. Out of the five investigations she cited, only one of them found that discrimination had occurred, and the fact that her supervisor was "critical of her findings" does not suggest that she opposed any unlawful activity. Accordingly, she is estopped from relitigating the issue of whether she opposed any unlawful discriminatory practice through her investigations. Thus, she is unable to make a *prima facie* case under HRS § 378-2(2).

With regards to the participation clause, the Federal Court found that Appellant's personal discrimination claims (here, the filing of her own EEOC charges) were not causally related to any adverse employment action. Motoyama I, 864 F. Supp. 2d at 982. The Federal Court found that the defendants met their burden of production "through providing admissible evidence sufficient for the trier of fact to conclude that [Appellant] was terminated for knowingly filing false complaints against her co-workers and the resulting negative impact on other HDOT employees," and that Appellant failed in her burden to rebut this showing. Id. The Federal Court also found that she could not establish a causal connection because she filed her second

EEOC charge after her termination. Id. In making this holding, the issue of whether Appellant's suspension and termination were causally related to Appellant's own EEOC claims was essential to the judgment and has been decided on the merits. Thus, Appellant is estopped from relitigating causation again here. As causation is an essential element to a HRS § 378-2(2) claim, she is unable to make a prima facie showing here.

In sum, Appellant's HRS § 378-2(2) claims under the opposition and participation clauses are barred by collateral estoppel. Therefore, we conclude that the Circuit Court did not err when it dismissed Count I.

Count II claims a violation of the ADA and HRS § 378-2(1), alleging disability discrimination and retaliation. Appellant alleges that Appellees discriminated against her based on her disability by

> denying or unreasonably delaying the providing of reasonable accommodations of parking in closer proximity, a flexible schedule for traveling to ADA fitted restrooms, a flexible arrival time due to her serious injuries and need to use the City Handi-Van, extended time to complete work, and denying her permission to install a personally-purchased printer that she requested upon her return to work[.]

She also alleges that Appellees subjected her to "a hostile work environment and numerous adverse actions based upon her status as a disabled person requesting ADA Reasonable Accommodations, including, but not limited to, being placed under investigation, having her duties removed, being placed on Administrative Leave, and [being] wrongfully discharged from employment."

As the ADA discrimination and retaliation claim has already been litigated in Motoyama I,[3] it cannot be relitigated here. The District Court dismissed the ADA claim against the DOT for money damages pursuant to Eleventh Amendment immunity; however, the claim against Okimoto for injunctive relief was heard and, in that context, the issues of discrimination and retaliation were decided on the merits against Appellant. Motoyama I, 864 F. Supp. 2d at 985-92.

Although the ADA and HRS § 378-2(1) are analogous, they are not identical causes of action; therefore, a final judgment on the merits of the ADA claim does not bar the HRS 378-2 claim under the doctrine of res judicata. But where any elements of the ADA claim have been actually litigated, finally decided, and are essential to the valid final judgment in Motoyama I, collateral estoppel precludes their relitigation.

Hawai'i's disability discrimination law is codified as HRS § 378-2(1) (1993), and states, in relevant part: "It shall be an unlawful discriminatory practice . . . [b]ecause of . . . disability . . . [f]or any employer to . . . bar or discharge from employment, or otherwise to discriminate against any individual in compensation or in the terms, conditions, or privileges of employment[.]"

As noted above, the anti-retaliatory provision of Hawai'i's disability discrimination law is codified as HRS § 378-

---

[3] In Motoyama I, Appellant did not specify whether her claim came under ADA Title I or Title II. However, the court in Motoyama I properly found that Title II of ADA (denial of public benefits) does not apply to employment. Motoyama I, 864 F. Supp. 2d at 986 (citing Zimmerman v. Or. Dep't of Justice, 170 F.3d 1169, 1184 (9th Cir. 1999)).

2(2), and holds that it is unlawful: "For any employer . . . to discharge, expel, or otherwise discriminate against any individual because the individual has opposed any practice forbidden by this part or has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part[.]"

The Federal Court expressly found that the State Defendants therein met their burden of production by showing that they did provide requested accommodations, or at least made a good faith effort to provide them. Motoyama I, 864 F. Supp. 2d at 990. The court also specifically found that Appellant failed in her burden of production by not producing evidence that she was denied her accommodations for parking and flex-time, or that her request for a personal printer was as an ADA accommodation rather than for personal privacy reasons. Id. at 990-91. Accordingly, the court found that there was no evidence of disability discrimination through the denial of reasonable accommodations.

Here Appellant makes the same allegation, but under the state statute. However, the issue of whether she was denied reasonable disability accommodations was actually litigated, finally decided, and essential to the grant of summary judgment against her. Thus, she is estopped from relitigating the issue here.

As to the issue of retaliation through subjecting Appellant to "adverse actions," the Federal Court found a lack of temporal proximity between her requests for accommodation and her

placement on leave and eventual termination because the majority of her requests for accommodations were "made over a year before her placement on administrative leave." Motoyama I, 864 F. Supp. 2d at 989-90. In granting summary judgment against Appellant, the court concluded that "[t]here is nothing in the record to establish an inference that [her] termination was causally connected to her request for accommodations." Id. at 989. As the issue of causation was actually litigated, finally decided, and essential to the grant of summary judgment, she is estopped from relitigating it. As causation is an essential element to a HRS § 378-2(2) claim, she is unable to make a *prima facie* case.

The mere fact that Appellant here posits certain alleged injuries (*i.e.*, not being provided with use of the City's Handi-van, being placed under investigation, having her duties removed) were not specifically addressed in Motoyama I does not permit the relitigation of the same subject matter. See Silver v. Queen's Hosp., 63 Haw. 430, 436, 629 P.2d 1116, 1121 (1981). Collateral estoppel nevertheless applies because the "particular issue in question" (*i.e.*, the denial of reasonable accommodations, retaliation) "was actually litigated, finally decided and [is] essential to the earlier valid and final judgment." Smallwood v. City & Cty. of Honolulu, 118 Hawai'i 139, 147, 185 P.3d 887, 895 (App. 2008). We conclude that the Circuit Court did not err in dismissing this claim as it was barred by collateral estoppel.

Count III claims a violation of The Equal Protection Clause of the U.S. Constitution and art. I and art. XVI of the Hawaiʻi Constitution, alleging that

> Ms. Motoyama was subjected to disparate treatment by Defendants due to her disability and the protected activity in which she engaged. Based on Ms. Motoyama's disability status and her role as an Equal Employment Opportunity Officer/Specialist who acted in accordance with all laws, the Defendants denied her the equal application and protection of all of its laws by treating those in similar or same circumstances, disparately, or more favorably than Ms. Motoyama. The constitutional laws which protect Ms. Motoyama were ignored or unequally applied in her case, and, in addition, federal and state laws protecting Ms. Motoyama which were known to Defendants, were flagrantly disregarded or applied unequally.

(Format altered).

In Motoyama I, the District Court granted summary judgment to the defendants on Motoyama's equal protection claim on the grounds that: (1) there is no direct cause of action under the Constitution and an Equal Protection claim would have to be brought under 42 U.S.C. § 1983; (2) Motoyama failed to bring her claim under § 1983; and (3) that even if she did, § 1983 does not provide a cause of action against state defendants. 864 F. Supp. 2d at 992-93. As the Equal Protection under the U.S. Constitution claim has already been litigated in Motoyama I, it cannot be relitigated here.

As to her claim under the Hawaiʻi State Constitution, Appellant's failure to raise said claim in Motoyama I precludes its litigation here.

> The res judicata effect of a final federal court judgment applies to all state claims which could have been raised under pendent jurisdiction. A plaintiff cannot maintain a second action in state court on the same transaction in which he attempts to advance a state law theory earlier omitted in a federal action. Only where it is clear that a federal court would have refrained from exercising pendent jurisdiction over the state claims, such as where a jurisdictional bar operates, or where the federal court has

> exercised its discretion not to hear them, will those state claims not be barred in a subsequent state court suit.

Silver, 63 Haw. at 437-38, 629 P.2d at 1122-23 (citations omitted).

Count IV claims defamation through libel, slander, and false light invasion of privacy, and Count V claims IIED.

Count IV alleges that Appellees "intentionally and/or recklessly" uttered

> false statements, including nonprivileged statements to Defendant HDOT employees regarding Ms. Motoyama, which Defendants knew would cause said employees to shun or avoid Ms. Motoyama, or hold her in disdain, statements made to employees who had no need to know, false statements that were maliciously made during the investigation and unemployment hearing, that were designed to damage [her] professional reputation, character and standing[.]

In Count V, Motoyama re-alleges and incorporates by reference her prior allegations and contends that the Appellees thereby intentionally inflicted extreme emotional distress upon her.

In Motoyama I, Appellant sought to amend her complaint to bring these claims, but was denied leave to add them because the Federal Court would not have supplemental jurisdiction over them. As these claims were denied on jurisdictional grounds, and the issues at the crux of these claims were not decided on the merits, they are not barred by res judicata or collateral estoppel.

Counts IV and V are subject to the two-year statutes of limitations set forth in HRS §§ 657-4 and 657-7 (1993). Motoyama was placed on administrative leave on March 4, 2009. The alleged tortious acts and injuries all were alleged to have occurred prior to her being placed on administrative leave and, therefore,

Motoyama's claims accrued prior to that date.  As this suit was filed on August 5, 2011, Motoyama's tort claims in Counts IV and V are barred by the applicable statutes of limitations.

Count VI claims wrongful termination in violation of civil service laws and public policy, specifically, that Appellant "was discharged without just cause and in violation of Hawai'i Civil Service laws and public policy, and in retaliation for reporting or in the process of reporting in the future, violations of law or suspected violations of law."  There are three requirements for bringing an actionable claim for wrongful termination in violation of public policy.

> First, the employee's discharge must violate a clear mandate of public policy. Second, the cause of action is limited to certain protected activities. Such activities include refusing to commit an unlawful act, performing an important public obligation, or exercising a statutory right or privilege. Third, there must be evidence of a causal connection between the termination and the protected action.

Cambron v. Starwood Vacation Ownership, Inc., 945 F. Supp. 2d 1133, 1140 (D. Haw. 2013) (emphasis added) (citing Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1067 (9th Cir. 2002)).

In Motoyama I, the issue of whether Appellant's termination was for cause or retaliatory was decided on the merits against her.  Therefore, under the doctrine of collateral estoppel, Appellant is estopped from litigating this factual issue again here.  As Appellant is collaterally estopped from proving that her termination was wrongful, she is unable to make a prima facie case.

Count VII claims a violation of the HWPA.  Appellant claims that Appellees "discriminated against and/or retaliated against [her] for reporting violations of law or suspected

18

violations of law being committed by Defendant HDOT personnel by subjecting [her] to a retaliatory hostile work environment and numerous adverse actions based upon her having reported the violations or suspected violations of law." The HWPA provides, in relevant part:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because: (1) The employee . . . reports or is about to report to the employer . . . verbally or in writing, a violation or a suspected violation of: (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State[.]

HRS § 378-62 (Supp. 2014).

In Crosby v. State Dept. of Budget & Fin., 76 Hawaiʻi 332, 342, 876 P.2d 1300, 1310 (1994), the Hawaiʻi Supreme Court described and discussed the elements of a valid claim under the HWPA:

> In order for an employee to prevail under the HWPA, however, the employer's challenged action must have been taken 'because' the employee engaged in protected conduct in order to be considered 'discriminatory' under the HWPA. In other words, a causal connection between the alleged retaliation and the 'whistleblowing' is required. The HWPA's legislative history indicates that the legislature intended that the required burden of proof be similar to that utilized in traditional labor management relations discharge cases. Under the National Labor Relations Act, as amended, 29 U.S.C. §§ 151-168 (1988), an employee has the burden of showing that his or her protected conduct was a 'substantial or motivating factor' in the decision to terminate the employee.

(Citation and brackets omitted.)

Thus, under Crosby, an HWPA plaintiff must show that the employee engaged in protected conduct, as defined in HWPA, that the employer took some adverse action against the employee, and that the employer's challenged action was taken *because* the employee engaged in the protected conduct, *i.e.*, that the

protected conduct was a substantial or motivating factor in the employer's decision to take the challenged action.

Albeit in the context of Motoyama's federal claims, in Motoyama I, the Federal Court determined, based on the same adverse actions as alleged herein, that Motoyama could not establish a causal connection between any protected activity and the alleged adverse actions. Motoyama I, 864 F. Supp. 2d at 983-84. Rather, the adverse actions were attributed to Appellant knowingly filing false complaints against her co-workers. Id. at 982. As the Federal Court ruled against Motoyama in Motoyama I on this issue, and because that ruling was essential to the judgment entered against her in that case, Motoyama is collaterally estopped from relitigating the issue again here.

Accordingly, we need not reach the parties other arguments and, for these reasons, we conclude that the Circuit Court did not err in entering the Order Granting Rule 12(c) Motion. Therefore, the Circuit Court's March 4, 2013 Final Judgment is affirmed.

DATED: Honolulu, Hawaiʻi, November 22, 2016.

On the briefs:

Elizabeth-Ann K. Motoyama,
Plaintiff-Appellant *Pro Se*.

James E. Halvorson,
Maria C. Cook,
Deputy Attorneys General,
for Defendants-Appellees.

Presiding Judge

Associate Judge

Associate Judge

20